☒ FILED   ☐ LODGED

# Aug 09 2017

CLERK U.S. DISTRICT COURT
DISTRICT OF ARIZONA

_Frank Jarvis Atwood #062887_
Name and Prisoner/Booking Number

_Arizona State Prison - Eyman Complex_
Place of Confinement

_Box 3400 (Browning Unit)_
Mailing Address

_Florence, AZ 85132_
City, State, Zip Code

**(Failure to notify the Court of your change of address may result in dismissal of this action.)**

## IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF ARIZONA

_Frank Jarvis Atwood_,
(Full Name of Plaintiff)          Plaintiff,

vs.

(1) _Nurse Practitioner M. Gay_,
(Full Name of Defendant)

(2) _[and others]_
_pg. 1A_,

(3) _____,

(4) _____,
Defendant(s).

☐ Check if there are additional Defendants and attach page 1-A listing them.

CASE NO. CV-17-2682-PHX-JAT-JZB
(To be supplied by the Clerk)

_(Jury Trial Requested)_

**CIVIL RIGHTS COMPLAINT
BY A PRISONER**

☒ Original Complaint
☐ First Amended Complaint
☐ Second Amended Complaint

## A. JURISDICTION

1. This Court has jurisdiction over this action pursuant to:
   ☒ 28 U.S.C. § 1343(a); 42 U.S.C. § 1983
   ☐ 28 U.S.C. § 1331; Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388 (1971).
   ☐ Other: _____.

2. Institution/city where violation occurred: _Florence, Arizona_
   _(AZ State Prison - Eyman Complex)_

Revised 5/1/2013                    1                    **550/555**

2

## Additional Defendants

2. Glen Babich

3. Maureen Johnson

4. Dr. Barker, Robert

5. Corizon (corporation)

## B. DEFENDANTS

1. Name of first Defendant: __M. Gay__. The first Defendant is employed as:
__a nurse practitioner__ at __Eyman Complex__.
   (Position and Title)                        (Institution)

2. Name of second Defendant: __Glen Babich__. The second Defendant is employed as:
__a doctor and medical director__ at __Eyman Complex__.
   (Position and Title)                        (Institution)

3. Name of third Defendant: __Maureen Johnson__. The third Defendant is employed as:
__a facility health administrator__ at __Eyman Complex__.
   (Position and Title)                        (Institution)

4. Name of fourth Defendant: __Dr. Barker, Robert__. The fourth Defendant is employed as:
__health care provider__ at __Eyman Complex__.
   (Position and Title)                        (Institution)

**If you name more than four Defendants, answer the questions listed above for each additional Defendant on a separate page.**

## C. PREVIOUS LAWSUITS

1. Have you filed any other lawsuits while you were a prisoner?        ☒ Yes        ☐ No

2. If yes, how many lawsuits have you filed? __2__. Describe the previous lawsuits:

   a. First prior lawsuit:
      1. Parties: __Atwood__ v. __Ryan__
      2. Court and case number: __District Court (AZ) in 2013__.
      3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?) __settled__

   b. Second prior lawsuit:
      1. Parties: __Atwood__ v. __Ibarra (nee Faye)__
      2. Court and case number: __District Court (AZ) in 2016__
      3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?) __mutually agreed upon dismissal__

   c. Third prior lawsuit:
      1. Parties: _____ v. _____
      2. Court and case number: _____
      3. Result: (Was the case dismissed?  Was it appealed?  Is it still pending?)_____

**If you filed more than three lawsuits, answer the questions listed above for each additional lawsuit on a separate page.**

## B. Defendants

5. The name of fifth Defendant: Corizon (corporation).
The fifth Defendant is employed as: a private
medical contract provider at the Arizona Department of
Corrections.

## D.  CAUSE OF ACTION

### COUNT I

1.    State the constitutional or other federal civil right that was violated:  _Eighth Amendment_
_prohibition of cruel and unusual punishment._

2.    **Count I.**  Identify the issue involved.  Check **only one.**  State additional issues in separate counts.
- ☐ Basic necessities        ☐ Mail            ☐ Access to the court        ☒ Medical care
- ☐ Disciplinary proceedings    ☐ Property        ☐ Exercise of religion        ☐ Retaliation
- ☐ Excessive force by an officer  ☐ Threat to safety  ☐ Other: _____.

3.    **Supporting Facts.**  State as briefly as possible the FACTS supporting Count I.  Describe exactly what **each Defendant** did or did not do that violated your rights.  State the facts clearly in your own words without citing legal authority or arguments.

_See pg. 3A, Supporting Facts._

4.    **Injury.**  State how you were injured by the actions or inactions of the Defendant(s).

_See pg. 3D, Injury._

5.    **Administrative Remedies:**
- a.    Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?                                                        ☒ Yes    ☐ No
- b.    Did you submit a request for administrative relief on Count I?                ☒ Yes    ☐ No
- c.    Did you appeal your request for relief on Count I to the highest level?        ☒ Yes    ☐ No
- d.    If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
_____.

## Count I

Supporting Facts

1. Plaintiff has suffered spinal disease since the late 1980's, diagnoses include stenosis, degenerative disc and joint disease, sciatica, hypertropic changes, herniated discs, and scoliosis — he has been on continuous treatment, and since 2015 has been in a wheelchair.

2. In January 2017 Plaintiff began experiencing numbness in both hands (causing usage, dexterity difficulty) and in his pelvis (making standing, ambulating at all problematic).

3. On 4 May 2017 Plaintiff submitted a Health Needs Request (HNR) complaining of increasing numbness and asking to see the Health Care Provider (HCP), this being Defendant Nurse Practitioner (NP) Gay; a referral to Defendant Gay was completed on May 4th.

4. On 5 May 2017 Plaintiff went to nursing line regarding numbness; another referral to see Defendant Gay was made.

5. On 14 May 2017 Plaintiff filed an "Urgent" HNR to see Defendant Gay about the numbness (mentioning the May 4 & 5 referrals to her); nursing sent the request to Defendant Gay on May 14th.

6. On May 18, 2017, Plaintiff lodged an emergency grievance regarding Defendant Gay's continued failure to see, examine, treat Plaintiff.

7. On 18 May 2017 Plaintiff sent an Informal Resolution to the Director of Nursing about not being seen or having received any medical attention from Defendant Gay.

8. On 18 May 2017 Plaintiff submitted another "Urgent" HNR on Defendant Gay's refusal to provide any medical attention.

9. On 19 May 2017 Plaintiff saw Defendant HCP/NP Gay; however, no exam or treatment was performed.

10. On 21 May 2017 Plaintiff filed a renewed Informal Resolution complaining about Defendant Gay providing no medical attention for hand and pelvic numbness, and associated difficulties.

11. On 21 May 2017 another HNR was submitted by Plaintiff seeking attention for numbness; a referral was made for Defendant Gay on May 22nd.

12. On 22 May 2017, at nurse's line, Plaintiff related the increased debilities from numbness; Defendant Gay was informed.

13. On 24 May 2017 Plaintiff contacted Defendant Glen Babich on Defendant Gay's refusal to treat and the resultant failing health; Babich is a Regional Medical Director & doctor.

14. On 27 May 2017 Plaintiff went to nursing line and he expressed numbness increased, while Defendant Gay refused to provide any medical treatment; another referral to Defendant Gay was issued on May 27th.

15. On 31 May 2017 Plaintiff went to the Health Unit for a 30 May emergency room follow-up; Defendant Gay persisted in denying attention for numbness and ignored Plaintiff's request for orthopedic, physical therapy, and/or neurology referrals.

16. On 9 June 2017 Defendant Facility Health Administrator Maureen Johnson responded to Plaintiff's emergency grievance, stating all required care for numbness seems to have been provided.

17. On 11 June 2017 Plaintiff lodged a new grievance with Defendant Johnson to explain the absence of any attention whatsoever and the concomitant health decline from numbness.

18. On 4 July 2017 Plaintiff filed another HNR seeking medical care for numbness.

19. On 5 July 2017 Plaintiff went to nurse's line and a referral to Defendant Gay re numbness was completed.

20. On 16 July 2017 Plaintiff submitted an HNR over further numbness and related problems.

21. On 19 July 2017 another HNR was filed by Plaintiff regarding no medical attention for the numbness, difficulty using hands, inability to walk.

22. On 21 July 2017 Plaintiff was at nurse's line, a new referral went to Defendant HCP Barker.

23. On or about 22 July 2017 communications (with a list of facts similar to these) and request for Plaintiff to receive medical attention) were emailed to: Defendant Babich, Defendant Johnson, the Prison Law Office, and the AZ Atty. General.

24. On 26 July 2017 Plaintiff again sent an HNR about the numbness, health decline, and not seeing Def. Barker; a referral to said Defendant issued.

25. On 27 July 2017 nurse's line assured he (Plaintiff) would see Defendant Barker.

26. On 29 July 2017 Plaintiff was in the exercise room and tried to utilize his walker; a nasty fall occurred, Plaintiff badly hurt his right shoulder and buttocks.

9

27. On 30 July 2017 Plaintiff transferred from bed to wheelchair and hit his head (medical bandaged the cut); an HNR re shoulder injury, numbness, danger of declining health was sent by Plaintiff on July 31st.

28. On 1 August 2017 Plaintiff went to Health Unit and sitting at the desk outside Defendant Barker's door (for vital signs) experienced verbal assault by Barker — Atwood can stand so was "full of shit" and "better not pull any bullshit," and Atwood was a "fucking liar" — Plaintiff was then returned to his cell sans any exam or treatment for numbness, falls (shoulder sprain, cut head), decreasing health.

29. On 2 August 2017 Plaintiff again fell in the rec area when trying to use a walker, further injuring his shoulder and suffering abrasions on his knee and elbow; Plaintiff was transported to the Health Unit.

30. Defendant Barker decided Plaintiff did not need the wheelchair he has been forced to use for two years, stating a walker would suffice and seized the wheelchair — two falls while attempting to use a walker, injured shoulder, already unable to walk made this seizure outrageous ... Plaintiff must crawl on the floor for medication, food, etc. and frequently must defecate in a bag and urinate in his urinal.

31. Defendants Gay, Barker, Babich, and Johnson are all employees of Corizon.

32. Plaintiff continues to suffer numbness, difficulty using hands and standing — now labors sans the medically necessary wheelchair — and experiences mental anguish.

Injury

33. Defendant Gay functioned as Plaintiff's HCP, was responsible for his health care.

34. From May to July 2017 Defendant Gay was made aware of Plaintiff's hand and pelvic numbness — trouble standing, pain,

3D

falls, mental despair, etc. — on a dozen or so occasions; however, this Defendant never treated Plaintiff for numbness, has been deliberately indifferent to his serious medical needs (instead, inflicting pain, suffering, less mobility, worsening health).

35. Defendant Barker was a HCP assigned to treat Plaintiff's incapacity from numbness, pain, and suffering but refused to even examine him (instead abusing him verbally and taking his needed wheelchair); Plaintiff's health rapidly declines.

36. Defendant Babich was a physician and regional medical director, so responsible for Plaintiff's health care, yet upon having been informed several times of Plaintiff's numbness, debilitation, and suffering this Defendant refused to provide any treatment (this causing continued physical and mental decline).

37. Defendant Johnson, as a health administrator, must provide Plaintiff with health care, however, her path of destruction mirrored Babich's — made aware several times of Plaintiff's debilitation then refusing to provide medical attention (physical and mental welfare continue to decline as a result).

38. Corizon is the medical provider for Arizona prisons and must enact and follow policies providing adequate inmate health care; delays and denials (supra) evidence Corizon's failure to do so.

39. In particular, Corizon functions under systematic policies that are detrimental to Plaintiff's physical and mental welfare (his health continues to deteriorate).

## COUNT II

1. State the constitutional or other federal civil right that was violated: _Eighth Amendment bar on cruel and unusual punishment._

2. **Count II.** Identify the issue involved. Check **only one.** State additional issues in separate counts.

☐ Basic necessities ☐ Mail ☐ Access to the court ☒ Medical care
☐ Disciplinary proceedings ☐ Property ☐ Exercise of religion ☐ Retaliation
☐ Excessive force by an officer ☐ Threat to safety ☐ Other: _____.

3. **Supporting Facts.** State as briefly as possible the FACTS supporting Count II. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

_See pg. 4A, Supporting Facts._

4. **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

_See pg. 4C, Injury._

5. **Administrative Remedies.**
   a. Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution? ☒ Yes ☐ No
   b. Did you submit a request for administrative relief on Count II? ☒ Yes ☐ No
   c. Did you appeal your request for relief on Count II to the highest level? ☒ Yes ☐ No
   d. If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____
   _____.

4

## Count II

### Supporting Facts

1. Plaintiff began difficulty with urinating on 13 May 2017.

2. Plaintiff sent an HNR re urination on 14 May 2017, nursing completed a referral to Defendant Gay.

3. Plaintiff was on nurse's line 17 May 2017 and explained how in order to urinate he had to heat water, soak tissue in it, and place it an inch or so in his rectum; one disposable catheter was issued and a referral went to Defendant Gay.

4. On 18 May 2017 Plaintiff (a) sent a complaint to the nursing director, (b) lodged an emergency grievance, and (c) filed an HNR — all to explain the urinary issue and to seek treatment; a referral went to Defendant Gay on May 18th.

5. Plaintiff saw Def. Gay on 19 May 2017, the urine sample was poured out and no treatment was given (no catheters, nothing).

6. On 21 May 2017 Plaintiff sent an HNR to relate still employing the above "process" and receiving no attention medically; nursing issued a referral to Defendant Gay.

7. An Informal Resolution went to Defendant Johnson regarding no care for urinary problems on 21 May 2017.

8. Plaintiff was on nurse's line 22 May 2017, and another referral for urinary went to Defendant Gay.

9. A second urine sample was provided on 24 May 2017, it went missing.

10. On 27 May 2017 Plaintiff was seen by nursing line and Plaintiff explained the "process" required to urinate, a referral was sent to Defendant Gay.

11. On 31 May 2017 Defendant Gay saw Plaintiff for a hospital visit follow-up, no treatment for urinary difficulty was given.

12. On 9 June 2017 Defendant Johnson denied Plaintiff's emergency grievance, so facilitated no urinary treatment.

4A

13. On 11 June 2017 Plaintiff submitted a grievance over the continued difficulty urinating and refusal of any medical care.

14. Plaintiff sent another HNR on 4 July 2017 regarding urinary problems and no medical attention.

15. On 5 July 2017 Plaintiff went to nursing line and explained the continued wads of tissue soaked in heated water for a rectal insertion to pee and no treatment; a referral to Defendant Gay was completed.

16. On 16 July 2017 Plaintiff sent an HNR on urinating still difficult.

17. On 19 July 2017 Plaintiff filed another HNR on urinary trouble.

18. Plaintiff went to nurse's line on 21 July 2017 and a renewed referral re urinary was sent to Defendant Barker.

19. On or about 22 July 2017 emailed communications went to Defendants Babich & Johnson, as well as to the Prison Law Office and AZ Atty General, to describe Plaintiff's urination difficulty and to request medical attention.

20. On 26 July 2017 Plaintiff filed an HNR re urinary and not being seen by Defendant Barker; a referral went to Def Barker on 27 July 2017, when nursing line assured Plaintiff he would be seen.

21. On 31 July 2017 Plaintiff sent another HNR on continued problems urinating and no treatment.

22. On 1 August 2017 Defendant Barker hurled wild accusations at Plaintiff in the Health Unit and no treatment was provided.

23. Defendants Gay, Barker, Babich, and Johnson are all employees of Corizon.

24. Plaintiff continues to use the required "process" to urinate and experiences consequent mental turmoil.

4B

## Injury

25. As a nurse practitioner Defendant Gay is tasked with providing Plaintiff's health care and in May 2017 was informed on about half a dozen occasions of Plaintiff's urinary troubles.

26. Def. Gay refused all care, would not even provide catheters, and has left Plaintiff with having to insert tissue soaked in hot water up his rectum to pee — physical & mental welfare suffers.

27. Defendants Babich and Johnson (a medical director and health administrator, respectively) are responsible for ensuring Plaintiff receives appropriate health care; however, once repeatedly advised of Plaintiff's trouble urinating (the "process" necessary) neither Defendant provided any care for him and he must continue a terribly demeaning procedure.

28. Corizon is required to implement procedures that afford proper inmate care and their practices fail to do so; make it difficult to see HCP's and receive care, which causes ongoing urination problems.

29. Defendant Barker was the health provider for Plaintiff but cursed at and refused to treat him; past, current, and future harm befalls Plaintiff due to this Defendants inaction and cruelty.

**COUNT III**

1.  State the constitutional or other federal civil right that was violated: <u>Eighth Amendment</u>
<u>proscription of cruel and unusual punishment.</u>

2.  **Count III.** Identify the issue involved. Check **only one**. State additional issues in separate counts.
    - ☐ Basic necessities
    - ☐ Mail
    - ☐ Access to the court
    - ☒ Medical care
    - ☐ Disciplinary proceedings
    - ☐ Property
    - ☐ Exercise of religion
    - ☐ Retaliation
    - ☐ Excessive force by an officer
    - ☐ Threat to safety
    - ☐ Other: _____

3.  **Supporting Facts.** State as briefly as possible the FACTS supporting Count III. Describe exactly what **each Defendant** did or did not do that violated your rights. State the facts clearly in your own words without citing legal authority or arguments.

    <u>See pg. 5A, Supporting Facts.</u>

4.  **Injury.** State how you were injured by the actions or inactions of the Defendant(s).

    <u>See pg. 5B, Injury.</u>

5.  **Administrative Remedies.**
    a.  Are there any administrative remedies (grievance procedures or administrative appeals) available at your institution?  ☒ Yes  ☐ No
    b.  Did you submit a request for administrative relief on Count III?  ☒ Yes  ☐ No
    c.  Did you appeal your request for relief on Count III to the highest level?  ☒ Yes  ☐ No
    d.  If you did not submit or appeal a request for administrative relief at any level, briefly explain why you did not. _____

**If you assert more than three Counts, answer the questions listed above for each additional Count on a separate page.**

<u>See pgs. 6 A – C for Count IV.</u>

5

## Count III

### Supporting Facts

1. On 13 May 2017 Plaintiff began experiencing difficulty urinating; an HNR was submitted 14 May and a referral to Defendant Gay was made.

2. Plaintiff was given one single use catheter on 17 May 2017.

3. On 19 May 2017 Plaintiff saw Def. Gay, who required that he remain in the Health Unit until providing a urine sample — Gay would not permit Plaintiff to wash the disposable, used catheter, nor would she provide a new, clean catheter (and no rubbing alcohol or lubricant); Plaintiff was forced to use a filthy catheter to give a urine sample, which was then discarded.

4. Plaintiff sent an HNR on 21 May 2017 and went to nursing line on 22 May, where he related urinary tract infection (UTI) symptoms — dark, cloudy, smelly urine and much burning — a referral went to Defendant Gay.

5. On 24 May 2017 Plaintiff provided another urine sample (to replace the one discarded on May 19) for a urine culture, it was lost.

6. Plaintiff filed an HNR on 27 May 2017 about UTI symptoms and no treatment by Defendant Gay; at nurse's line a referral to Def. Gay and request for antibiotics issued.

7. UTI symptoms worsened and Plaintiff filed an HNR on 29 May 2017 for help.

8. On 30 May 2017 Plaintiff tried to reach the toilet and fell, then vomitted; he was taken to the Health Unit where his temperature was over 102° F and nursing feared sepsis — Plaintiff was rushed to the hospital by ambulance and received emergency room care (he was stabilized and given an IV plus indwelt catheter).

5A

9. On 31 May 2017 Plaintiff had a follow-up from hospital care meeting with Defendant Gay and complained of worsened dehydration; his request for the IV recommended by Florence Hospital was denied and no care was provided.

10. Plaintiff sent an HNR on 1 June 2017, about terrible effects from UTI, before passing out (crashed to the floor) and going to the Health Unit by gurney with a 90/60 blood pressure; IV administered.

11. On 2 June 2017 Plaintiff saw Dr. Williams, who ordered the removal of the indwelt catheter and another IV.

12. Plaintiff nearly feinted on 3 June 2017 and went for an evaluation to the Health Unit.

13. Defendant Gay is a Corizon employee.

---

Injury

14. nurse practitioner Defendant Gay was Plaintiff's health provider but acted to intentionally cause him to contract a UTI, and failed to treat it — Plaintiff had to be rushed by ambulance to an outside hospital for emergency treatment.

15. Defendants Babich and Johnson, as health care overseers made aware of Plaintiff's infection, did not arrange for any care, did not act to prevent a serious medical event.

16. Corizon's policies and practices made it impossible for Plaintiff to receive timely and adequate care, which caused his serious health crisis.

[Please see page 6A for Count IV!]

5B

## E.  REQUEST FOR RELIEF

State the relief you are seeking:

Plaintiff seeks compensatory and punitive damages in amounts to be determined at trial.

Plaintiff also requests injunctive relief requiring Defendants to provide prompt and adequate medical care.

Thank you.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   3 August 2017
                     DATE

SIGNATURE OF PLAINTIFF

Rachel L. Atwood; paralegal
(Name and title of paralegal, legal assistant, or
other person who helped prepare this complaint)

N/A
(Signature of attorney, if any)

(Attorney's address & telephone number)

## ADDITIONAL PAGES

All questions must be answered concisely in the proper space on the form.  If you need more space, you may attach no more than fifteen additional pages.  But the form must be completely filled in to the extent applicable.  If you attach additional pages, be sure to identify which section of the complaint is being continued and number all pages.

See pgs. 6A-C for Count IV

Violation of federal constitutional right to be free of cruel and unusual punishment (health/medical care).

## Supporting Facts

1. Plaintiff has been on Tramadol continually since 2013.

2. On 18 May 2017 Defendant Gay ceased the nightly dose, causing a 19 hr. gap (3:00pm - 10:00am) and adverse effects.

3. On 18 May 2017 Plaintiff submitted several complaints about the negative impacts (pain, sleeplessness, mental turmoil, etc.) and asked for the return of usual dosaging; complaints included an HNR, an emergency grievance, the Director of Nursing, and Defendant Dr. (Regional Medical Director) Glen Babich.

4. On 19 May 2017 Plaintiff saw Defendant Gay, who was unable to articulate a medical necessity for decreasing Tramadol and could only state an intent to remove all Tramadol to then place Plaintiff on Zonisamide — an epilepsy drug contraindicated by liver problems (Plaintiff has Hep. C and liver cirrhosis), kidney disease (Plaintiff has kidney stones), and mental issues (Plaintiff has PTSD, anxiety, and depression; takes a couple of psych meds; has been on suicide watch twice).

5. Plaintiff recontacted Defendant Babich on 19 May 2017 about Zonisamide contraindications, and requested Tramadol resumption, and lodged an HNR with mental health.

6. Defendant Gay reduced Tramadol further on 20 May 2017; Plaintiff sent an HNR to complain about ill effects.

7. On 21 May 2017 Plaintiff lodged another HNR re pain, mental issues, withdrawal symptoms, sleeplessness; a referral to Defendant Gay issued.

8. Plaintiff shared with the Director of Nursing, in a 21 May 2017 communique, the planned usage of Zonisamide (and contra-indications w/plaintiff) & Tramadol decrease results.

6A

9. On 22 May 2017 Plaintiff submitted HNR's to mental health and a letter to psychologist Dr. Wilyerd about the dangers of Zonisamide and results of the Tramadol decrease; Plaintiff saw Dr. Wilyerd (Zonisamide peril confirmed & Defendant Gay notified) and was on nurse's line, referral to Def. Gay made.

10. On 23 May 2017 Plaintiff endured so much pain and immobility from Tramadol decrease that he defecated in his pants and had to remain for 15-20 min. in bed until able to crawl to the sink/toilet to clean-up.

11. On 24 May 2017 Plaintiff contacted Dr. Babich (Defendant and a Regional Medical Director) regarding pain & immobility from less Tramadol (now having no life) and seek dosage restoration, asked for infirmary residency consideration.

12. On 25 May 2017 Plaintiff began receiving Zonisamide.

13. Plaintiff filed an HNR on 25 May 2017 regarding dangers of his using Zonisamide, and mental health saying to not take it; communication regarding the same was also sent to Defendant Babich.

14. On 27 May 2017 Plaintiff was on nurse's line pleading for full Tramadol dosing (to curtail pain, immobility, mental turmoil) and discontinuance of Zonisamide; referral to Defendant Gay issued.

15. When at the Health Unit on 30 May 2017 Plaintiff asked for stoppage of Zonisamide due to worsening mental problems.

16. On 1 June 2017 full Tramadol dosages resumed.

17. On 2 June 2017 Zonisamide was discontinued.

18. On 1 August 2017 Plaintiff was taken to the Health Unit to see Defendant HCP Barker, while vitals were being taken by the nurse this Defendant began berating Plaintiff

6.B

(using wording such as "you're full of shit" and "you're a fucking liar" shouted from his office at Plaintiff [sitting next to his door]). Plaintiff was returned to his cell without having been at all examined or treated.

19. Later on August 1, 2017, nursing passed out medication and informed Plaintiff that Defendant Barker had cut his Tramadol and Robaxin; the physical and mental pain will be devastating.

20. Defendants Gay, Babich, Barker, and Johnson are Corizon employees.

_____

Injury

21. Defendants Gay & Barker, as Plaintiff's HCP's, were made aware of his decades long history of severe pain from spinal disease but absent medical necessity cut Plaintiff's needed meds without adequate replacement; leaving Plaintiff less mobile and in excruciating (avoidable) physical pain and mental anguish.

22. Defendants Babich & Johnson are health care supervisors and when aware of the incomprehensible reduction of required pain meds both failed to curtail Plaintiff's unnecessary suffering.

23. Corizon's procedures do not provide proper health care and, consequently, caused Plaintiff's mental and physical suffering.

Plaintiff completed the grievance process through the highest level.

End

6C